## JOHN RED v. THE STATE.

### No. 1764.   Decided November 23, 1898.

**1.   Principals in Crime—Intent of Each the Test of His Criminality.**

At common law, and under our statute, it is not necessary to allege the facts constituting one a principal even where the offense was actually committed by another and where he is a principal only by reason of the part performed by him in its commission. If he enters into its commission with the same intent and purpose, his offense will be of the same degree as the actual doer; but if his intent is a different criminal one, he will be guilty according to the intent with which he may have performed his part of the act. The general rule under our statute, Penal Code, article 75, would seem to be that the guilt of the principal in the second degree, or one aiding the doer of the act, is measured by the intent of the one actually committing the offense.

**2.   Same—Murder—Degrees.**

Under an indictment charging several as principals in a murder, it is competent to convict one of one degree of felonious homicide and another of some other degree according to the intent actuating the particular principal in the commission of the part performed by him in the murder.

**3.   Same—Charge.**

If, in a particular case, the actual doer may be guilty of one degree of felonious homicide, and the aider or abetter guilty of another degree, the charge of the court should properly present the case to the jury as to the person actually committing the offense, embracing his or her intent, and should instruct the jury that if the defendant, knowing the intent of the party actually committing the offense, entered into it and aided the doer with some other intent on his part of a greater or less degree, to find him guilty and assess his punishment accordingly. See a charge held erroneous as not properly submitting the issue.

APPEAL from the District Court of Franklin. Tried below before Hon. J. M. TALBOT.

Appeal from a conviction for murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the important facts in the case.

*King & King* and *S. M. Long,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his puinshment assessed at imprisonment in the penitentiary for life; hence this appeal.

The charge in the indictment was the murder of an infant child immediately after its birth, by suffocation, strangling, and by some means unknown to the grand jury. On the trial the State introduced the mother of the said infant, Epsy Keith, who was evidently an accomplice. Her testimony showed that illicit relations existed between her and defendant; that said child was born on Friday night, alive, no one being present except herself and defendant; that defendant immediately took the child from the room where it was born, and while it was still living and crying, and that she did not see the child again; that he returned in a short time, and thereafter, on the following Monday, informed her that he had buried it near the path leading to the spring under the large double oak tree. She further stated as the reason for her making different statements in regard to this matter that she was afraid John Red, who had threatened her, would kill her. Several days after the birth of said child, in pursuance of the suggestion of Epsy Keith, it was found buried under the oak tree near the path. The umbilical cord was wrapped around its neck, but it was not shown that it was choked to death by this means. No marks of violence were shown on the body. The doctors who made the post mortem examination, after applying the hydrostatic test to the lungs, testified that in their opinion the child was born alive. There was also testimony tending to show that appellant, about the time suspicion was aroused in regard to the child, fled from the county, but was captured and brought back. The testimony also shows that after his arrest, and after he had been duly warned, he stated to the officer that Epsy Keith had killed the child by suffocating it with her hand, that he was present at the time, and that at her request he buried it. A number of witnesses were introduced by the defendant in impeachment of the witness Epsy Keith, showing that she had stated to a number of persons that the child was born dead, and exculpated appellant. These are substantially all the facts proved on the trial.

The court charged the jury only on murder in the first degree. Applying the law to the facts, he instructed them, in effect, in one paragraph of the charge, that if they believed the child was born alive, and appellant killed it by suffocating and strangling it, etc., of his express malice aforethought, to find him guilty of murder in the first degree. In another paragraph of the charge, the court, after defining who were principals, instructed the jury as follows: "Now, if you believe from the evidence, beyond a reasonable doubt, that Epsy Keith, in Franklin County, Texas, on or about the 20th day of December, A. D. 1896, did give birth to a child; that said child, if any, was born alive, and in existence, by actual and complete birth, as explained to you; and if you believe from the evidence, beyond a reasonable doubt, that said Epsy Keith did on or about said time, in the county of Franklin and State of Texas, and after said birth, if any, unlawfully, violently, and intentionally, by strangling,

smothering, or suffocating it, kill said child; and if you further believe from the evidence, beyond a reasonable doubt, that the defendant, John Red, was present, and knew the unlawful intent and purpose of the said Epsy Keith, and did then and there, with express malice aforethought, with a sedate and deliberate mind, and formed design to take the life of said child, aid by acts, or encourage by words or gestures, the said Epsy Keith in taking the life of said child, if she did take it,—then and in that case you will find the defendant guilty of murder in the first degree."

We have quoted at length the above charge, because appellant's main contention for a reversal of this case is predicated thereon. He contends that the charge as to the guilt of Epsy Keith would only make her guilty of manslaughter, or at most murder in the second degree, and that appellant's guilt is measured by hers; that is, he can be convicted for no greater offense than she could be convicted of. At common law there were principals of the first and second degree. "A principal of the first degree being one who does the act either in person or through an innocent agent." "A principal of the second degree is one who is present, lending his countenance, aid, encouragement, or other mental aid, while another does the act." 1 Bish. Crim. Law, sec. 648. Under our statute there is no such division of principals, but all are principals who are present and encourage in the act; including both the one actually performing the act, and others who may be present aiding in its performance. While there are no degrees under our statute, yet the principles governing the question who are principals are the same; and both at common law and under our statute it is not necessary to allege the facts relied upon to show the party to be a principal, although the offense may not have been actually committed by him, if he is a principal by reason of the part performed by him in the commission of the offense. Williams v. State, 42 Texas, 392; Gladden v. State, 2 Texas Crim. App., 508; Davis v. State, 3 Texas Crim. App., 91; Tuller v. State, 8 Texas Crim. App., 501; Mills v. State, 13 Texas Crim. App., 487. The contention of appellant that a principal of the second degree, or one who, under our statute, did not actually commit the offense himself, but who was present, and, knowing the unlawful intent, etc., aided the person who did commit it, can only be convicted of the same degree as the actual doer, is not a sound one. If he enters into the commission of the offense with the same intent and purpose, then his offense will be of the same degree as the actual doer, but he may have a different criminal intent from the one who perpetrates or does the act; and in such case he will be guilty according to the intent with which he may have performed his part of the act. Guffee v. State, 8 Texas Crim. App., 187; and authorities cited in White's Ann. Penal Code, sec. 92; Rex v. Murphy, 6 Car. & P., 103; 1 Whart. Crim. Law, secs. 214, 220, 479. We therefore hold that it is competent, under an indictment charging all as principals in murder, to convict one of such principals of one degree of felonious homicide, and another of some other degree of felonious homicide, according to the

intent with which such principals may have performed the particular act attributed to and proved against them. And, if the court had properly charged as to the degree of guilt of Epsy Keith, the jury might have convicted appellant in this case of murder in the first degree, although they may have believed from the evidence that Epsy Keith killed the child, and under the proof would be guilty of some lower grade of felonious homicide. An examination of the charge, however, shows that same does not furnish the jury a proper rule by which to measure or gauge the degree of homicide as to Epsy Keith. They are told, if she by violence intentionally and unlawfully killed the child, and if he was present, and by his express malice, etc., aided, etc., he would be guilty of murder in the first degree. This charge, as to her, does not define any degree of felonious homicide. As to her, it is not a charge on murder in the first or second degree, because it contains no suggestion of malice aforethought, either express or implied, and it does not present a proper charge on manslaughter. Jennings v. State, 7 Texas Crim. App., 350. Our statute on principals, which was given in charge by the court, provides as follows: "When an offense is actually committed by one or more persons, but others are present, and, knowing the unlawful intent of the person committing the offense, aid by acts, or encourage by words and gestures, those actually engaged in the commission of the unlawful act, all such persons are principals, and may be prosecuted and convicted as such." Penal Code, art. 75. So the general rule would seem to be that the guilt of the principal in the second degree, or one aiding the doer of the act, is measured by the intent of the one actually committing the offense. In order to measure this intent, the law measuring and defining the intent of the actor or doer, it occurs to us, should be properly given; the statute being, if a person present, knowing such unlawful intent, aids the doer thereof by acts, etc., he is guilty with the same intent and purpose. If in a particular case the actual doer of the offense may be guilty of one degree of felonious homicide, and the aider or abettor guilty of another degree, the case should be properly presented to the jury as to the person actually committing the offense, embracing his or her intent; and then the jury should be instructed that if appellant, knowing such intent of the actual committer of the offense, entered into it, and aided such doer, with some other intent on his part of a greater or less degree, to find him guilty and assess his punishment accordingly. In this case, if Epsy Keith killed the child, she may have been guilty of murder in the first or second degree,—possibly of manslaughter. If appellant aided or encouraged her, knowing the unlawful intent which possessed her, he may have been guilty of the homicide in the same degree, or he may have been guilty of the homicide in some other degree, according to the intent which actuated him. We hold that the jury should have been properly instructed as to the guilt of Epsy Keith (that is, of what degree of homicide, as suggested by the facts, she may have been guilty, based on her intent), and that then they should have been instructed, as

suggested by the facts, of what degree of homicide appellant may have been guilty, predicated upon the intent which may have actuated him.

Appellant contends that this case should be reversed on account of certain denunciatory remarks of the district attorney in his closing argument. The remarks were improper, but it is not necessary to discuss them, inasmuch as the case must be reversed on account of the failure and refusal of the court to properly instruct the jury as above discussed. For the error of the court in failing to instruct the jury as heretofore discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.